**Shirley C. FOX and Bill Hulett, Appellants,**

v.

**Al GALLO, Appellee.**

**No. 7791.**

Court of Civil Appeals of Texas.

Amarillo.

March 18, 1968.

Rehearing Denied April 22, 1968.

Hugh L. Umphres, Jr., Amarillo, for appellants.

Richards & Ferguson, Dalhart, for appellee.

NORTHCUTT, Justice.

Shirley C. Fox and Bill Hulett, as plaintiffs, brought this suit against Al Gallo, as defendant, to recover the sum of $10,500.00 or in the alternative, $4,192.42 based upon an alleged breach of an oral contract between them and Gallo whereby Fox and Hulett were to take and pasture 1,000 head of Gallo's cattle for a gross and aggregate consideration of $28,000.00, such pasturage to be for one year from November 1, 1963, to November 1, 1964. For convenience the plaintiffs will hereafter be referred to as appellants and the defendant as appellee.

Appellants and appellee made and entered into a written lease as follows:

"This pasture agreement between Al Gallo and Hulett and Fox pertains to the pasturing of 1,000 yrlgs @ the Sneed Ranch in Dallam County, Texas for a period beginning Nov. 1st, 1962 on 600 @ 25.00 for 1 yr ending Nov. 1st, 1963.

Beginning May 1st 1963 Hulett and Fox agree to pasture 400 additional yearlings @ the rate of $18.00 for Six Months. In case of drouth the ylgs. have to be moved. We will prorate the pasture accordingly. At the present time Mr. Gallo has Hfrs Calves on the pasture. May the first 1963 Mr. Gallo has the right to move these Hfrs and replace them w/strs of the same age and weight.

One half of the pasture bill is to be paid at the beginning of the pasture period and the balance to be paid upon delivery of the cattle to the scales at the ranch.

Hulett and Fox will guarantee the count but all death loss will be stood by Mr.

Gallo, the carcus or brand of the dead animal to be shown by Hulett & Fox.

(Signed) Al Gallo—Hulett & Fox by
Shirley C. Fox
12/14/62."

The terms of that agreement ending November 1, 1963, were complied with by both parties and will not be considered any further herein. The parties agreed orally that appellee could have the pasture for another year ending November 1, 1964, but the rate or charge would be $28.00 instead of the $25.00. In seeking to recover the sum of $10,500.00, it is appellants' contention that appellee was obligated to pay $28,000.00 for the entire year. In seeking in the alternative the $4,192.42 appellants contend the rate should be based upon a daily basis.

It was contended by appellee that the parties contemplated that such oral agreement would be under all of the same terms and conditions as the written contract for the prior year except that the price would be $28.00 per head instead of $25.00 per head or in the alternative that appellee was a holdover tenant under the terms of the prior contract. Appellee further contended that since the written contract was silent as to the basis of proration, in the event of a drouth and the cattle had to be moved from the pasture, that a fixed general custom in the cattle business would control and in that connection contended the custom was so much for the winter months, November 1 through April 30, and so much for the summer months, May 1 through October 31. The cattle were removed August 15, 1964.

The case was submitted to a jury upon 16 special issues and the first 15 were answered but the jury could not agree on the 16th issue. The verdict was received by the court and filed and appellants admit the court found favorable to appellee as to issue 16 since no objections were made to the receiving of the verdict. The findings in answer to the issues were that the parties did not enter into an oral agreement whereby appellee agreed to pay $28,000.00 to appellants to pasture and care for 1,000 head of cattle from November 1, 1963, to November 1, 1964; the parties intended for the pasturing of appellee's cattle from November 1, 1963, to November 1, 1964, to be controlled by the written lease except the price would be $28.00 per head; that the parties intended appellee would be a tenant holding over for 1963–1964 under the terms of the written agreement except the price would be $28.00 per head; that the parties intended that any proration of the pasture rent because of lack of grass would be done on a customary basis in the cattle business; that a division of the annual rental of $28.00 would be in keeping with the general custom of the cattle business and would be $7.00 for winter months, November 1 through April 30, and $21.00 through the summer months, May 1 through October 31; that the parties intended such pasturing of appellee's cattle would be governed and controlled by the custom of the cattle business in Dallam County, Texas; that the general custom in the cattle business was, where because of lack of moisture there is not sufficient grass for the cattle, the owner of the cattle can remove them from the pasture and stop the rent; that when appellee agreed to pasture the cattle the general custom in the cattle business in Dallam County, Texas, was that, under a pasturing arrangement in event the cattle are removed from the pasture because of dry weather, the rent will be prorated to the date the cattle are removed and that when appellee agreed to pasture the cattle it was the general custom in the cattle business in Dallam County, Texas, under such pasturing arrangements that a part of the annual consideration would be attributable to the summer months of May 1 through October 31 and a different amount to the winter months of November 1 through April 30. The other issues were in favor of the appellee but are not necessary to be discussed here. Appellee had paid appellants two payments, $7,000.00 and $10,500.00, making a total of $17,500.00 paid for such pasturage before the cattle were removed. Judgment was entered upon the verdict that appellants

recover nothing and from that judgment appellants perfected this appeal.

■ Appellants present this appeal upon several points of error but state due to the fact that all the points involve the same facts and are closely related to the same question of law, they are grouped and presented together. Appellants then state "This appeal, therefore, involves the ultimate question on the proper application of the drouth-pro-rata provision, coupled with collateral issues concerning the nature and sufficiency of the pleadings of the parties." Under this record we think it is clear that appellee had the right to remove the cattle in case of a drouth and that appellee was not obligated to pay the full $28,000.00 for the entire year and overrule appellants' claim for the $10,500.00.

The remaining issue then to be determined is whether the appellants are entitled to recover the $4,192.42. It is appellants' contention since the pasturage was furnished for 288 days they should recover $288/365$ths of $28,000.00 reduced by the $17,500.00 paid by appellee and further reduced by $368.00 for the loss of four head of cattle that had strayed away for which appellants were obligated to pay.

It was appellee's contention because of custom that the price of pasturage was based upon a rate for winter pasturage from November 1 through April 30 and a different rate for summer pasturage from May 1 through October 31; that the sum due for pasturage would be based upon the different seasons the pasture was used. Both of the appellants and also the appellee, as well as some of the witnesses, were cattlemen. The jury found that the division of the annual rental of $28.00 would be made in keeping with the general customs of the cattle business between the summer months and the winter months and would be $7.00 per month from November 1 through April 30 and $21.00 per month from May 1 through October 31. We think this record

clearly shows that it was the intention of the parties that the extension of the lease would be under the same terms and conditions of the original lease except the rate would be $28.00 per head instead of $25.00 per head. Rupert v. Swindle, Tex.Civ.App., 212 S.W. 671.

■ Evidence of custom is admissible to explain an ambiguous contract or to add to it elements not in contravention of its terms. Miller v. Gray, 136 Tex. 196, 149 S.W.2d 582, 141 A.L.R. 1237, and cases there cited.

■ It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts accrue, not to add to or vary their terms but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties. First National Bank of Amarillo v, Rush, Tex.Com.App., 210 S.W. 521; Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007; Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579 and Scott v. Walden, 140 Tex. 31, 165 S.W.2d 449, 154 A.L.R. 1.

It is stated in Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004 as follows:

"It is true that, even though a written contract be unambiguous on its face, parol evidence is admissible for the purpose of applying the contract to the subject with which it deals; and if by reason of some collateral matter an ambiguity then appears, proof of the facts and circumstances under which the agreement was made is admissible, in order that the language used in the contract may be read in the light thereof for the purpose of ascertaining the true intention of the parties as expressed in the agreement. In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain,

parol evidence is permissible to aid in making the application. First National Bank v. Rush, Tex.Com.App., 210 S.W. 521; Klueter v. Joseph Schlitz Brewing Co., 143 Wis. 347, 128 N.W. 43, 32 L.R.A., N.S., 383; 22 C.J. 1192. This does not mean, however, that the parties may prove the making of an agreement different from that expressed in the written contract, nor that the unambiguous language used in the contract may be violated or the legal effect thereof changed. It merely permits proof of the then existing circumstances in order to enable the court to apply the language used therein to the facts as they then existed. Reynolds v. McMan Oil & Gas Co., Tex. Com.App., 11 S.W.2d 778; Southern Gas & Gasoline Engine Co. v. Richolson, Tex. Com.App., 216 S.W. 158. It can do no more than explain the doubtful relations of the instrument consistently with the relations of the parties, the subject matter of the contract, and the other incidents thereof. 22 C.J. 1194. Consequently, the fact that the parties may have intended to make a different contract from that embodied in the deed, or afterwards thought that they had actually made a different one, becomes immaterial, in the absence of a plea of fraud, accident, or mistake."

The written contract might be construed as providing a different charge for the summer pasturage from the winter rate. The contract provides a rate of $18.00 for six summer months for 400 yearlings while the entire year pasturage was for $25.00. If the customary rule is to be applied in construing this agreement that the pasturage should be $7.00 per month for winter months and $21.00 for summer months as found by the jury, then appellee did not owe the appellants anything. The lease contract does not state the manner of proration and we think the trial court was correct in submitting the custom to establish the real intention of the parties.

Judgment of the trial court is affirmed.